IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**JOHN I. TOMINAK** and **DENA L. TOMINAK,** husband and wife,

        Plaintiffs,

v.                                  Civil Action No. 5:13-CV-121
                                            (BAILEY)

**WILLIAM CAPOULLEZ** and
**GEOLOGICAL ASSESSMENT
AND LEASING,** a foreign limited
liability company,

        Defendants.

## ORDER DENYING PLAINTIFFS' MOTION TO REMAND

Pending before this Court is Plaintiffs' Motion to Remand [Doc. 6], which was filed on September 17, 2013. Defendants filed their Response in Opposition [Doc. 8] on October 1, 2013. Plaintiffs filed their Motion to Strike and Reply to Defendants' Response to Their Motion to Remand [Doc. 9] on October 8, 2013. Defendants filed their Response in Opposition to Plaintiffs' Motion to Strike [Doc. 13] on October 22, 2013. Plaintiffs filed their Reply [Doc. 14] on October 29, 2013. Having been fully briefed, the motions are ripe for disposition. For the reasons that follow, both motions are **DENIED**.

### Background

This case was originally filed in the Circuit Court of Ohio County, West Virginia, on July 30, 2013 [Doc. 1]. In their Complaint, plaintiffs allege the defendants, Pennsylvania

1

residents, engaged in the unauthorized practice of law when they acted as "consultants" for the plaintiffs, representing them in matters related to the procurement, negotiation, execution and performance of an oil and gas lease for their 215 acre parcel of land [Doc. 1-1, ¶ 8]. In exchange for these services, the defendants charged a fee based upon any monies received as follows: (1) 10% of any bonus rental payment; (2) 12.5% of any delay rental payments, in perpetuity; and (3) 1.5% of royalty payments, in perpetuity [Doc. 1-1, ¶ 11]. The Complaint seeks to disgorge any such payments to the defendants. (Id. at ¶ 19(e)).

On August 29, 2013, defendants removed this case pursuant to 28 U.S.C. § 1332(a) asserting that the parties are diverse and that the amount in controversy exceeds $75,000, exclusive of interests and costs [Doc. 1]. The plaintiffs timely filed the pending Motion to Remand [Doc. 6] asserting that the defendants failed to meet their burden of proof that the amount in controversy has been met. In response, the defendants filed a post-removal affidavit [Doc. 8-1] which attempts to establish the requisite jurisdictional amount. The plaintiffs have moved to strike the affidavit as untimely [Doc. 9].

### Discussion

"We begin with the undergirding principle that federal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations. Accordingly, a party seeking to adjudicate a matter in federal court must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter. If a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction

over the matter." *Strawn v. AT & T Mobility*, 530 F.3d 293, 296 (4th Cir. 2008) (citations omitted).

Federal courts "'are obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated' and that 'if federal jurisdiction is doubtful, a remand to state court is necessary.' *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (internal quotation marks, citations, and alterations omitted); see also *Shamrock Oil [& Gas Co. v. Sheets]*, 313 U.S. at 109 ('Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.' (internal quotation marks omitted))." *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 333-34 (4th Cir. 2008).

Defendants seeking removal bear the burden of demonstrating that jurisdiction is proper. See *Strawn v. AT & T Mobility LLC*, 530 F.3d at 296-97. "While a defendant filing a notice of removal under 28 U.S.C. § 1446(a) need only *allege* federal jurisdiction with a short plain statement - just as federal jurisdiction is pleaded in a complaint - when removal is challenged, the removing party bears the burden of *demonstrating* that removal jurisdiction is proper." *Strawn, supra* at 297 (emphasis in original), citing *Elienburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008).

"The question then becomes how that burden is to be satisfied. Generally, the amount specified in the complaint will determine whether the jurisdictional amount is satisfied for purposes of removal. See *Wiggins v. North Am. Equitable Life Assurance Co.*, 644 F.2d 1014, 1016 (4th Cir. 1981). Determining the amount in controversy

3

becomes more difficult, however, where, as here, Plaintiffs have left damages unspecified in their complaint. In this case, both parties agree that the defendant's burden in these circumstances is to establish the jurisdictional amount by a preponderance of the evidence." *Bartnikowski, supra* at 734 (footnote omitted).

In this case, the defendants appended to their Response on Opposition to the Motion to Remand an Affidavit of William Capouillez [Doc. 8-1]. In his Affidavit, Capouillez states, *inter alia*:

1. That he has over twenty-five years of experience in oil, gas, and mineral leasing and development and has testified as an expert witness on several occasions in this field;

2. That within a reasonable degree of geological certainty and oil and gas industry estimates, wells drilled in this area can be expected to generate six-figure royalty payments per acre over a twenty-five year life;

3. That royalty payments of 1.5% on Marcellus Shale well properties has a resell value of $5,000 per acre; and

4. That bonus rental payments for similar leases in this area have been paid in excess of $3,000 per acre.

The plaintiffs contend that Mr. Capoullez' Affidavit is deficient because it is untimely and too speculative. This Court will now address both of these alleged deficiencies.

    A.    Post-Removal Affidavits

The plaintiffs move to strike the defendants' Affidavit because it was filed along with the response in opposition rather than at the time of removal. In support of their position, the plaintiffs' direct this Court to *Bordas v. Alps Corp.*, 2013 WL 525642 at *2 (N.D. W.Va.

Feb. 12, 2013), wherein the Honorable Judge Frederick P. Stamp, Jr. stated:

> When the amount in controversy is not apparent on the face of the plaintiff's complaint, the federal court must attempt to ascertain the amount in controversy by considering the plaintiff's cause of action as alleged in the complaint and any amendments thereto, the notice of removal filed with a federal court, and other relevant materials in the record. 14C Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure*, 3725 at 73 (3d ed. 1998). However, the court is limited to examining only evidence that was available at the moment the petition for removal was filed. ***Chase v. Shop 'N Save Warehouse Foods***, 110 F.3d 424, 428 (7th Cir. 1997).

As such, the plaintiffs contend that it is the defendants' obligation to produce proof by way of documents, affidavits or evidence to support its claim that the jurisdictional threshold amount has been met at the time of removal. The plaintiffs argue that despite their obligation to do so, the defendants failed to submit any such proof in their Notice of Removal filed August 29, 2013. Accordingly, the plaintiffs move this Court to strike the Affidavit and not consider this "new" evidence submitted in the Court's determination of amount in controversy.

This Court, however, is not convinced that a bright-line rule exists to bar consideration of a post-removal affidavit for purposes of establishing the jurisdictional amount in controversy. "Ordinarily, whether a case is removable is determined by 'the status of the case as disclosed by the plaintiff's complaint.' ***St. Paul [Mercury Indem. Co. v. Red Cab Co.]***, 303 U.S. [283, 291 (1938)]. A post-removal stipulation or amendment

5

of the complaint to allege damages below the jurisdictional amount will not destroy federal jurisdiction *once it has attached*. *Id.* at 289-90. However, when facing indeterminate claims, several courts have held that the court may consider a stipulation filed by the plaintiff that the claim does not exceed [the jurisdictional amount]." ***Gwyn v. Wal-Mart Stores, Inc.***, 955 F.Supp. 44 (M.D.N.C. 1996)(emphasis added).

The ***Gwyn*** Court further explained that "[t]he implicit premise is that until jurisdiction becomes determinate, the court may consider any evidence of the amount in controversy. If the complaint does not specify the money damages sought, jurisdiction remains indeterminate while the court considers any other information. On this view, plaintiff's stipulation is simply the first evidence of the value of the claim. *See, e.g.* ***Cole [v. Great Atlantic & Pac. Tea Co.]***, 728 F.Supp. [1305, 1309 (E.D. Ky. 1990)]. However, if a court can find the amount in controversy from the face of the complaint, the normal rule still applies: a later stipulation by the plaintiff is irrelevant. ***De Aguilar [v. Boeing Co.]***, 11 F.3d [55, 57 (5th Cir. 1993)]."

In this case, the amount in controversy is not apparent on the face of the plaintiffs' Complaint. In West Virginia, it is not required that the Complaint's *ad damnum* clause state a specific dollar amount. In such circumstances, the Court may consider the entire record before it and may conduct its own independent inquiry to determine whether the amount in controversy satisfies the jurisdictional minimum. ***Mullins v. Harry's Mobile Homes***, 861 F.Supp. 22, 23 (S.D. W.Va. 1994). In so doing, the Court is not required "to leave common sense behind." *Id.* at 24.

The defendants' Notice of Removal only states that the amount in controversy

6

exceeds the $75,000 threshold jurisdictional amount. "[A] defendant filing a notice of removal [ ] need only *allege* federal jurisdiction with a short plain statement – just as federal jurisdiction is pleaded in a complaint – when removal is challenged, the removing party bears the burden of *demonstrating* that removal jurisdiction is proper. **Ellenburg**, 519 F.3d 192, 200." **Strawn**, at 293 (emphasis in original).

Furthermore, as "the amount in controversy often goes to the merits of the case [it] is likely to be a fact-smothered inquiry. Thus the tradition of allowing sparse amount in controversy allegations, and burdening a litigant to cite specific supporting evidence only if properly challenged by court or opponent. **McNutt v. General Motors Acceptance Corp. of Indiana**, 298 U.S. 178, 189 (1936). The Court sees no reason to stray from these principles in the removal context, and its position is well-supported by authority." **Tyler v. Berger**, 2005 WL 2596164 (W.D. Va. Oct. 13, 2005)(collecting cases).

The instant case presents to this Court the very circumstances outlined above. First, the *ad damnum* clause in the Complaint is silent as to the amount in controversy. Believing the amount satisfied, the defendants filed "a short and plain statement of the grounds for removal." See 28 U.S.C. § 1446(a). Once *challenged* by the Motion to Remand, the defendants filed the Affidavit of Capouillez in order to "cite specific supporting evidence" to "demonstrat[e] that removal jurisdiction is proper." **Strawn**, at 297. In so doing, since the amount in controversy cannot be determined from the face of the Complaint, the defendants' "[Affidavit] is simply the first evidence of the value of the claim." **Gwyn v. Wal-Mart**, 955 F.Supp. at 46. As such, this Court will now address the amount in controversy giving consideration to the challenged Affidavit.

7

B.  Amount in Controversy

The plaintiffs also attack the sufficiency of the Capouillez Affidavit, arguing that it is not specific to the subject case and that it is based on general assumptions regarding property as a whole. Plaintiffs further point out that the defendants have failed to submit any proof that the plaintiffs' property has been or ever will be drilled for oil or gas, or if the property is drilled, whether there would be 3, 6 or 8 holes drilled or how much oil or gas would be extracted from each hole. Finally, the plaintiffs argue that not every acre of property leased by a gas company produces royalties, and the defendants merely speculate that the subject property in this case will yield any royalties.

In *Bartnikowski v. NVR, Inc.*, 307 Fed.Appx. 730 (4th Cir. 2009), the Fourth Circuit found similar portions of a removing party's affidavit to be sufficient. It was only the unsupported assumption that class members worked five hours of overtime per week that led to the affirmation of the remand of the case. In *Bartnikowski*, the Court found that multiplying the number of months by the expected monthly amount of overtime would yield a *reasonable estimate* of the unpaid wages at stake.

In *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013), the Eighth Circuit held that "Defendants are not required to provide a 'formula or methodology for calculating the potential damages' more accurately, as the district court held. We have specifically rejected the need for this kind of formula or methodology . . .." In reviewing such affidavits, one must bear in mind that the issue is "'not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties. That the plaintiff may fail in its proof, and the judgment be less than the threshold (indeed, a good chance that the

8

plaintiff will fail and the judgment will be zero does not prevent removal.'"). *Martin v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 3259418, *5 (S.D. W.Va. August 18, 2010) (Chambers, J), quoting *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448-49 (7th Cir. 2005). Accord, *Raskas*, supra at 887 ("the question 'is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are.'").

In addition, Courts have considered whether the party seeking remand has provided no contrary evidence. In *Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123 (C.D. Cal. May 9, 2011), the Court noted that there was no contrary evidence and no allegation that the plaintiff seeks less than [the jurisdictional amount]. 2011 WL 1790123 at *7, quoting *Lewis v. Verizon*, 627 F.3d 395, 397 (9th Cir. 2010). For example, in *Strawn*, supra, the Fourth Circuit, in denying remand, noted that "the plaintiffs have offered nothing to suggest that the 58,800-customer figure is not an accurate number." 530 F.3d at 299.

In the specific context of oil and gas leases, this Court finds guidance from *Northup Properties, Inc. v. Chesapeake Appalachia*, 567 F.3d 767 (6th Cir. 2009). In that case, the plaintiff argued that the defendant's proffer of a petroleum engineer's affidavit was not enough to meet the defendant's burden in proving the amount in controversy. That affidavit offered evidence of future cash flows, the discounted present value of the well on the plaintiff's property, the value of the undeveloped acreage, and the initial cost of drilling the well. *Id.* at 769. The Sixth Circuit noted that in evaluating the amount in controversy in oil and gas lease cases, several courts applied similar metrics as those used by the engineer: "(1) the tract's fair market value, (2) both fair market value and net value of the

9

mineral interest, and (3) the diminished value of the land burdened with an oil-and-gas lease or the increased value without the lease." *Id.* at 770 (citations omitted). The court noted that "accounting for mineral interest is not an exact science . . . [but] that the speculative character of such interests 'does not defeat the existence of a 'market value' in mineral rights.'" *Id.* at 771 (citation omitted). Thus, the court found that the engineer's affidavit was sufficient to show the amount in controversy. *Id.* Such is the case here.

In his affidavit, Capouillez states that the resale value of a 1.5% royalty payment is $5,000 per acre [Doc. 8-1 at ¶ 10]. In this case, the subject property is a 215 acre parcel, which would far exceed the jurisdictional amount based on the market value of the royalty payments alone; i.e. $107,500. The contract in dispute also provides for a fee of 10% of any bonus rental payments. For whatever reason, neither party has provided the lease agreement between the plaintiffs and Chesapeake, from which this Court could easily determine the contractual rental payment per acre; however, Capouillez states in his affidavit that bonus rental payments on similar leases in this area have been documented to have been paid in excess of $3,000 per acre. (Id. at ¶ 9). Using that figure, the fee for the rental payments is $64,500. The aggregate of these two figures – $172,000 – far exceeds the requisite jurisdictional amount in controversy. Accordingly, this Court finds that the defendants have met their burden of proof, and this Court therefore has original jurisdiction over this matter pursuant to diversity jurisdiction under 28 U.S.C. § 1332(a).

## Conclusion

Upon consideration of the above, it is the opinion of this Court that the Plaintiffs' Motion to Strike **[Doc. 9]** should be **DENIED**. Further, inasmuch as this Court has found

the jurisdictional amount in controversy is satisfied, the Plaintiffs' Motion to Remand **[Doc. 6]** is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record herein.

**DATED:** November 4, 2013.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE