IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**JOHN I. TOMINAK** and **DENA L. TOMINAK,** husband and wife,

        Plaintiffs,

v.                                                Civil Action No. 5:13-CV-121
                                                (BAILEY)

**WILLIAM CAPOULLEZ** and
**GEOLOGICAL ASSESSMENT
AND LEASING,** a foreign limited
liability company,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO STAY AND TO COMPEL ARBITRATION

Pending before this Court is the Motion to Stay and to Compel Arbitration by Defendants, William Capouillez and William Capouillez d/b/a Geological Assessment & Leasing [Doc. 19], filed September 22, 2013; Plaintiffs' Response to Defendants' Motion to Stay and to Compel Arbitration [Doc. 27]; and Defendants' Reply Memorandum to Plaintiffs' Response to Defendants' Motion to Stay and to Compel Arbitration [Doc. 30]. The parties now having fully briefed the issue, the motion is ripe for decision.

### I. Statement of Facts and Procedural History

This case was originally filed in the Circuit Court of Ohio County, West Virginia, on July 30, 2013 [Doc. 1]. In their Complaint, plaintiffs allege the defendants, Pennsylvania

residents, engaged in the unauthorized practice of law when they acted as "consultants" for the plaintiffs, representing them in matters related to the procurement, negotiation, execution and performance of an oil and gas lease for their 215 acre parcel of land [Doc. 1-1, ¶ 8]. In exchange for these services, the defendants charged a fee based upon any monies received as follows: (1) 10% of any bonus rental payment; (2) 12.5% of any delay rental payments, in perpetuity; and (3) 1.5% of royalty payments, in perpetuity [Doc. 1-1, ¶ 11]. The Complaint seeks to disgorge any such payments to the defendants. (Id. at ¶ 19(e)).

On September 17, 2013, the plaintiffs filed a Motion to Remand [Doc. 6], which this Court denied by Order dated November 4, 2013 [Doc. 18]. Subsequently, the defendants filed the instant Motion to Stay and to Compel Arbitration [Doc. 19]. In support, the defendants state that a valid arbitration clause exists in the subject oil and gas lease agreement.

The arbitration clause contained in the Lease Agreement states as follows:

**ARBITRATION**.
29.1   Any controversy or claim arising out of or relating to this Lease, or the breach thereof, shall be ascertained and settled by three (3) disinterested arbitrators in accordance with the rules of the American Arbitration Association, one thereof to be appointed by the Lessor, one by the Lessee, and the third by the two (2) so appointed aforesaid, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Arbitration proceedings hereunder shall be conducted at the county seat or the county where the lease or action occurred which is cause for the arbitration, or such other place as the parties to such arbitration shall all mutually agree upon. The cost of such arbitration will be borne

equally by the parties.

See [Doc. 20-1].

The plaintiffs assert two arguments against the applicability of the above arbitration clause. First, plaintiffs argue the clause does not apply to disputes between the plaintiffs and defendants because the defendants are not "parties" to the lease because defendant Capouillez signed the Lease as a "consultant." Second, the plaintiffs argue the clause is null and void as contrary to public policy because it would usurp the judiciary's power to regulate the practice of law in the State of West Virginia.

## II. Applicable Law

Section 2 of the Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party can compel arbitration by establishing: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the defendant to arbitrate the dispute. See **Adkins v. Labor Ready, Inc.**, 303 F.3d 496, 500-01 (4th Cir. 2002).

Generally, "[t]he FAA reflects 'a liberal federal policy favoring arbitration agreements.'" **Adkins,** 303 F.3d at 500 (quoting **Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.**, 460 U.S. 1, 24 (1983)). Indeed, the FAA serves as "a response to hostility of American courts to the enforcement of arbitration agreements, a judicial disposition inherited from then-longstanding English practice." **Circuit City Stores, Inc. v. Adams**, 532 U.S. 105, 111 (2001). Moreover, a court is required to "resolve 'any doubts concerning

the scope of arbitrable issues . . . in favor of arbitration.'" **Hill v. PeopleSoft USA, Inc.**, 412 F.3d 540, 543 (4th Cir. 2005) (quoting **Moses H. Cone Mem'l Hosp.**, 460 U.S. at 24-25).

There is one important caveat to the reach of the FAA. "Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts." **Hill**, 412 F.3d at 543 (citing **First Options of Chicago, Inc. v. Kaplan**, 514 U.S. 938, 944 (1995); **Moses H. Cone Mem'l Hosp.**, 460 U.S. at 24). For example, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2" of the FAA. *See* **Doctor's Assocs., Inc. v. Casarotto**, 517 U.S. 681, 687 (1996) (citations omitted).

State-law principles derived from West Virginia law cannot be used to invalidate the Agreement based solely on the fact that it contains an arbitration provision. "The Supreme Court has made clear that 'state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.' **Perry [v. Thomas]**, 482 U.S. [483,] at 492 n. 9 (stating further that '[a]n agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law* ... ') (citing **Moses H. Cone Mem'l Hosp.**, 460 U.S. at 24); *see* 9 U.S.C. § 2." **American General**, *supra* at 90.

It is well established that, "if a party seeks to avoid arbitration and/or a stay of federal court proceedings pending the outcome of arbitration by challenging the validity or enforceability of an arbitration provision on any grounds that 'exist at law or in equity for the

4

revocation of any contract,' 9 U.S.C. § 2, the grounds 'must relate specifically to the arbitration clause and not just to the contract as a whole.' ***Snowden v. CheckPoint Check Cashing***, 290 F.3d 631, 636 (4th Cir. 2002) (quoting ***Hooters of Am., Inc. v. Phillips***, 173 F.3d 933, 938 (4th Cir. 1999)). In fact, "when claims allege unconscionability of the contract generally, these issues are determined by an arbitrator because the dispute pertains to the formation of the entire contract, rather than the arbitration agreement." ***Sydnor v. Conseco Fin. Serv. Corp.***, 252 F.3d 302, 305 (4th Cir. 2001). Similarly, the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally." ***Buckeye Check Cashing, Inc. v. Cardegna***, 546 U.S. 440, 445 (2006) (quoting ***Prima Paint Corp. v. Flood & Conklin Mfg. Co.***, 388 U.S. 395, 403-404 (1967)).

### III. Discussion

**A. Claims Alleging the Unauthorized Practice of Law Can be Submitted to Arbitration.**

This Court certainly agrees that issues concerning the practice of law are of utmost importance to the judiciary. As recognized by the West Virginia Supreme Court of Appeals in ***West Virginia State Bar v. Earley***, 144 W. Va. 504 (1959):

> The judicial department of the government has the inherent power, independent of any statute, to inquire into the conduct of a natural person, a lay agency, or a corporation to determine whether he or it is usurping the function of an officer of a court and illegally engaging in the practice of law and to put an end to such unauthorized practice wherever it is found to exist. (Citations omitted).
>
> . . .
>
> 'The practice of law is so intimately connected and bound up with the

> exercise of judicial power in the administration of justice that the right to define and regulate its practice naturally and logically belongs to the judicial department of our state government.' (Quoting ***In re Integration of Nebraska State Bar Ass'n***, 133 Neb. 283, 275 N.W. 265). 'The proper administration of justice is the main business of a court, and whatever obstructs or embarrasses its chief function must naturally be under its control.' (Quoting ***In State ex rel. Hunter v. Kirk***, 133 Neb. 625, 276 N.W. 380).
>
> . . .
>
> [T]he sole power to define, supervise, regulate and control the practice of law is inherent in the judicial branch of the government . . .."

144 W. Va. 504, 532-34.

This Court notes that the above language is set in the context of a separation of powers analysis involving the state legislature. This Court finds no such similar authority pertaining to arbitration. Rather, this Court has found authority, albeit persuasive, that has permitted others than the states' high courts to decide issues pertaining to the practice of law.

In reaching its decision, this Court finds the guiding principals of ***Burford v. Sun Oil Co.***, 319 U.S. 315 (1943), provides a helpful analysis. What has become known as ***Burford*** abstention refers to a federal court relinquishing jurisdiction over matters involving a complex regulatory scheme and sensitive areas of state concern. ***Id***. The Eighth Circuit has specifically addressed such abstention in the arena of the unauthorized practice of law. In ***Casey v. FDIC***, 583 F.3d 586, (8th Cir. 2009), the Court was asked to abstain from "impairing Missouri's ability to regulate the legal profession within its borders" when confronted with an issue alleged to have been the unauthorized practice of law. The Court

stated that "*Burford* abstention applies when a state has established a complex regulatory scheme supervised by state courts and serving important state interests, and when resolution of the case demands specialized knowledge and the application of complicated state laws." *Id*. (Citation omitted). The Court held that "there [is] no indication that Missouri's prohibition on the unauthorized practice of law constitutes 'a complex regulatory scheme . . ..'" *Id*. This Court finds the same holds true in West Viginia.

Although defining the practice of law can prove to be an arduous task providing amorphous results,[1] the State of West Virginia has developed a reasonable framework from which to assess a claim for the unlawful practice:

> In general, one is deemed to be practicing law whenever he or it furnishes to another advice or service under circumstances which imply the possession and use of legal knowledge and skill. More specifically but without purporting to formulate a precise and completely comprehensive definition of the practice of law or to prescribe limits to the scope of that activity, one is deemed to be practicing law whenever (1) one undertakes, with or without compensation and whether or not in connection with another activity, to advise another in any matter involving the application of legal principles to facts, purposes or desires; (2) one undertakes, with or without compensation and whether or not in connection with another activity, to prepare for another legal instruments of any character; or (3) one undertakes, with or without

---

[1] "Arriving at a concise definition of what constitutes the practice of law has proven difficult for most courts . . . . Some jurisdictions have suggested that the term 'practice of law' has acquired such universal usage and meaning in the English language so as to neither permit nor require definition . . . . The suggestion from these decisions is that the meaning of the practice of law is so self-evident as to defy definition and that an attempted definition may prove to be counterproductive . . . . Other courts have held the practice of law to embrace all those acts commonly understood to be the business of lawyers." *Frieson v. Isner*, 168 W.Va. 758, 768 fn. 2 (1981) (citations omitted).

7

compensation and whether or not in connection with another activity, to represent the interest of another before any judicial tribunal or officer, or to represent the interest of another before any executive or administrative tribunal, agency or officer otherwise than in the presentation of facts, figures or factual conclusions as distinguished from legal conclusions in respect to such facts and figures.

*Definition of the Practice of Law*, W. VA. CODE ANN. COURT RULES 983 (amended 1961) (2013).

Turning to its application under the Federal Arbitration Act, the United States District Court for the Western District of Missouri squarely rejected the argument asserted by the plaintiffs in this case. In **Guitierrez v. State Line Nissan, Inc.**, 2008 WL 3155896 (W.D. Mo. August 4, 2008), the plaintiffs similarly argued that because one of their claims alleged a violation of a Missouri statute prohibiting the unauthorized practice of law, an arbitrator is not the proper authority to make such a determination; rather, a court of law should resolve the issue. The court addressed this argument as follows:

> The issue of whether Missouri courts are the sole authority authorized to determine whether conduct constitutes the unauthorized practice of law or doing law business has recently been considered by the Court in **Bass v. Carmax Auto Superstores, Inc.**, 2008 WL 2705506 (W.D. Mo. July 9, 2008). In **Bass**, as in the instant case, plaintiffs relied on a Missouri Supreme Court decision that discussed the role of Missouri courts in making such decisions. The Court found plaintiffs' interpretation of the Missouri Supreme Court decision to be erroneous. In **Bass**, the Court held that "[w]hile the Missouri Supreme Court made a statement to this effect, it was

discussing its role *viz a viz* the legislature's; it did not purport to discuss whether a dispute could be submitted to an arbitrator, and nothing in it said can be interpreted as precluding arbitration of a private dispute." **Bass v. Carmax Auto Superstores, Inc.**, 2008 WL 2705506 at *2 (W.D. Mo. July 9, 2008)(*see* **Eisel v. Midwest BankCentre**, 230 S.W.3d 335, 338-30 (Mo. 2007)(holding that "the judiciary is necessarily the sole arbiter of what constitutes the practice of law. Statutes may aid by providing machinery and criminal penalties but may not extend the privilege of practicing law to persons not admitted to practice by the judiciary . . . [statutes] are merely in aid of, and do not supersede or detract from, the power of the judiciary to define and control the practice of law")).

The Court went on to explain that

More importantly, it is the arbitrator's duty to apply the law, regardless of its source. There are many contexts in which one branch of the government is obligated to apply particular law, and there are many contexts in which one branch of the government is primarily obligated to address the law in a given area. These observations do not preclude an arbitrator from deciding a dispute between private parties who agree to arbitrate; otherwise, no arbitrator could decide anything because arbitrators are not ceded any governmental power. Moreover, this 'hostility toward arbitration' is the very reason the FAA exists. **Bass**, 2008 WL 2795506 at *2.

Thus, the **Guiterrez** court concluded that "[t]he Missouri Supreme Court's decision

discussing its role *viz a viz* the legislature's; it did not purport to discuss whether a dispute could be submitted to an arbitrator, and nothing in it said can be interpreted as precluding arbitration of a private dispute." **Bass v. Carmax Auto Superstores, Inc.**, 2008 WL 2705506 at *2 (W.D. Mo. July 9, 2008)(*see* **Eisel v. Midwest BankCentre**, 230 S.W.3d 335, 338-30 (Mo. 2007)(holding that "the judiciary is necessarily the sole arbiter of what constitutes the practice of law. Statutes may aid by providing machinery and criminal penalties but may not extend the privilege of practicing law to persons not admitted to practice by the judiciary . . . [statutes] are merely in aid of, and do not supersede or detract from, the power of the judiciary to define and control the practice of law")).

The Court went on to explain that

More importantly, it is the arbitrator's duty to apply the law, regardless of its source. There are many contexts in which one branch of the government is obligated to apply particular law, and there are many contexts in which one branch of the government is primarily obligated to address the law in a given area. These observations do not preclude an arbitrator from deciding a dispute between private parties who agree to arbitrate; otherwise, no arbitrator could decide anything because arbitrators are not ceded any governmental power. Moreover, this 'hostility toward arbitration' is the very reason the FAA exists. **Bass**, 2008 WL 2795506 at *2.

Thus, the **Guiterrez** court concluded that "[t]he Missouri Supreme Court's decision

in ***Eisel*** does not preclude an arbitrator from applying Missouri law to plaintiffs' case to determine if defendant's conduct constitutes the unauthorized practice of law . . .." ***Guiterrez***, 2008 WL 3155896 at *3. Similarly, although the West Virginia Supreme Court of Appeals has stressed its important role in regulating the practice of law in this State, this Court finds no discussion pertaining to or limiting whether such disputes can be submitted to arbitration.

> **B.** **Plaintiffs' Argument That the Defendants are Non-parties to the Lease Who Cannot Enforce the Arbitration Provision is Misplaced**

Plaintiffs argue that although defendant Capouillez is a signatory to the Lease, this does not make him a "party" able to invoke the Arbitration clause contained therein. This Court disagrees. Rather, the United States Court of Appeals for the Fourth Circuit has stated that "a signatory is necessarily bound by the terms of a valid contract for which he has bargained." ***Wachovia Bank, N'tnl Assoc. v. Schmidt***, 445 F.3d 762, 771 (4th Cir. 2006); *see also* ***Long v. Silver***, 248 F.3d 309, 320 (4th Cir. 2001) ("Because all the parties in the present litigation were signatories to the [] Agreement, the issues arising under and relating to [it] are properly arbitrable."). In this case, both plaintiffs and defendant were signatories to the Lease Agreement; accordingly, either party would be estopped from asserting that they are not bound by the Arbitration Clause contained therein.

The plaintiffs also argue that because the language contained in the Arbitration clause omits the "Consultant," it should only apply to the plaintiffs and the Lessee. Specifically, the Arbitration clause states that "Any controversy or claim . . . shall be ascertained and settled by three (3) disinterested arbitrators . . . one thereof to be appointed by the Lessor, one by the Lessee, and the third by the two (2) so appointed

10

aforesaid . . ..*" Thus, the plaintiffs make the argument that "[i]t makes no sense that the Lessee (Chesapeake) would be able to select an arbitrator in a dispute between the plaintiffs and defendants . . .." [Doc. 27]. While this Court agrees that such an arrangement is not typical or desirable for most, the Consultant nevertheless signed the Lease Agreement containing such an Arbitration provision and has further asked to invoke its terms.

Similarly, the plaintiffs argue that [i]t makes even less sense that Chesapeake would be responsible for one-half of the costs of the arbitration in the subject dispute which does not involve them, but the arbitration clause requires such allocation of expenses." [Doc. 27]. This Court agrees that such a fee agreement would be unfair. The plaintiffs, however, have misinterpreted the relevant language of the Arbitration clause, which states "[t]he cost of such arbitration will be borne equally by the parties." This Court disagrees with, yet understands the plaintiffs position that the "parties" refer to the Lessor and Lessee. Nevertheless, in the context of the Arbitration agreement, this Court finds the term "parties" specifically refers to those who may become "parties" to the arbitration. Here, the "parties" are clearly the plaintiffs and defendants, who shall equally bear the costs of arbitration.

## C. Plaintiffs' Argument That the Claims Alleged Do Not Arise Out of the Lease is Misplaced

The plaintiffs assert that the Complaint relates to the Consulting Agreement they entered into with the defendants wherein Capoullez agreed to act as the plaintiffs' consultant "in matters relative to the procurement, negotiation, execution, and performance of an oil and gas lease." [Doc. 1 at ¶ 8]. Therefore, the plaintiffs argue that the Complaint does not assert any cause of action that arises from of a breach of the Lease Agreement

11

and that to assert rights under the arbitration provision contained therein, the plaintiffs' claim has to derive from the Lease Agreement itself. This Court disagrees with the plaintiffs' analysis.

Again, this Court notes that it must resolve "any doubts concerning the scope of arbitrable issues [] in favor of arbitration . . .." ***Moses H. Cone Memorial Hosp.***, 460 U.S. 1, 24-25. "To that end, 'the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.' ***Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.***, 867 F.2d 809, 812 (4th Cir. 1989) (internal quotation marks omitted). Thus, we may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' ***United Steelworkers of America v. Warrior & Gulf Navigation Co.***, 363 U.S. 574, 582-83 (1960)." ***Long v. Silver***, 248 F.3d 309, 316 (4th Cir. 2001).

The Arbitration clause in this case states that "[a]ny controversy or claim arising out of or relating to this Lease, or the breach thereof, shall be [arbitrated]." Such broadly-worded language has been heavily viewed in favor of arbitration. The Fourth Circuit has held that "a broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration is contained. *See* ***American Recovery Corp. v. Computerized Thermal Imaging, Inc.***, 96 F.3d 88, 93 (4th Cir. 1996)." ***Long v. Silver***, 248 F.3d at 316. Further, "[t]he intentions of parties to an arbitration agreement are generously construed in favor of arbitrability." ***American Recovery***, 96 F.3d at 94. Here,

12

the parties explicitly agreed on an arbitration clause "that by its plain language has a broad scope." *Id*. "Thus, it is not inconsistent with the intentions of the parties to give the arbitration clause broad effect." *Long*, 248 at 317.

Given this framework, this Court disagrees with the plaintiffs' contention that their claims do not derive from the Lease Agreement. The allegations of the Complaint are for the unauthorized practice of law. As noted by the plaintiffs, the factual basis for such a claim is inextricably intertwined with the very "procurement, negotiation, execution, and performance of [the] lease." This Court finds that most, if not all facts alleged which could form a basis for the claim of unauthorized practice of law stem from the execution of the Lease Agreement. Specifically, the Complaint alleges:

> During the course of its "consulting" activities performed pursuant to the Agreement, defendants instructed and advised plaintiffs regarding their rights and obligations under the Lease; offered advice to plaintiffs of their legal ownership interest and the meaning of contract language; prepared, drafted, and developed documents for plaintiffs that required legal knowledge beyond the skill of an ordinary layman; suggested and gave advice on various lease provisions, mnay of which were not contained in the form lease utilized by Range; engaged in oil and gas lease negotiations on plaintiffs' behalf . . ..
> [Doc. 1-1 at ¶ 10].

"[W]e may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Long v. Silver*, 248 F.3d at 316. This Court finds the instant

13

dispute is covered by the broad language of the subject Arbitration clause; accordingly, arbitration is warranted.

## IV. Conclusion

For the reasons stated above, this Court hereby **GRANTS** the Motion to Stay and to Compel Arbitration by Defendants, William Capouillez and William Capouillez d/b/a Geological Assessment & Leasing **[Doc. 19]**. Accordingly, this Court finds that the case should be, and hereby is, **ORDERED** submitted to arbitration.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record herein.

**DATED:** January 13, 2014.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE